UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | CASE NO.   05-217 M |
| v. | ) | |
| | ) | DETENTION ORDER |
| JUDD HAWK WEBSTER, | ) | |
| Defendant. | ) | |

Offenses charged:

    Count I:    Conspiracy to Possess and Distribute Ephedrine, in violation of Title 21, U.S.C., Section 841(c)(2) and 846;

    Count II:    Conspiracy to Distribute MDMA, in violation of Title 21, U.S.C., Sections 841(a)(1), 841(b)(1)(C), and 846.

Date of Detention Hearing: May 9, 2005.

    The Court, having conducted a contested detention hearing pursuant to Title 18 U.S.C. § 3142(f), and based upon the factual findings and statement of reasons for detention hereafter set forth, finds that no condition or combination of conditions which the defendant can meet will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. The Government was represented by Mike Lang.

DETENTION ORDER
PAGE -1-

The defendant was represented by Paula Deutsch.

The Government argued for detention based on elements of danger and risk of flight. The Government indicated that the combined value of the drugs are estimated to be worth over ten million dollars, United States currency, which is the largest such seizure at the U.S.-Canadian border to date. The Government stated that the quantity and monetary worth of the seizure raises the stakes and elevates the threat of danger for all parties involved; the defendant, the co-conspirators, any potential witnesses, and the community at large. The Government believes that the seriousness of the offense is magnified when considering the number of lives ruined by the use of methamphetamine, thus magnifying the danger to safety of the community.

The Government asserted that, although circumstantial, the weight of the evidence ties all three of the defendants together in the conspiracy; evidence which includes a rented U-Haul truck and connections to a storage locker which contained documents referencing a fictitious company, several empty hockey bags, a shoe box, and seed bags which tested positive for ecstasy .

Additionally, a Ford commercial box truck was used for smuggling drugs between Canada and the United States. Upon border crossing into the United States, the box trucks manifest indicated a final destination for delivery to a fictitious company, Northwest Resale. Northwest Resale's address led FBI case agents to an empty field in Snohomish, Washington. Documents referring to this same fictitious company were found in the storage locker.

Both Webster and Pantoleon resided at the same residence in Oregon and reportedly worked in the fishing industry together in Alaska. A man named Joel Little verified this employment. It was of concern to the Government that a known offender to the FBI, also by the name of Joel Little and perhaps the same individual giving employment verification, had a van registered in his name, parked in the defendant's driveway. The

Government believes the verification by Little to be dubious noting that commercial Alaskan fishing involves travel patterns similar to that of drug smuggling. Further buttressing the Government's concerns of danger to the community, prior investigation reveals that a January 2002 stop of the defendant in Oregon resulted in the seizure of eleven illegal weapons including a machine gun, scanners, cell phones, two way radios, a global positioning system device, and four hockey bags.

The defense argued for release of the defendant and concurred with the recommendation of U.S. Pre-trial, indicating he may reside at the home of his grandparents. The defendant was raised in Bellingham and has significant ties to this district. The defendant's former place of employment, Dewey Valley Meat Company, which was owned by the defendant's grandparents is no longer in business, however. Pertaining to the weight of evidence as to this defendant, the defense asserts that the defendant has no ties to the storage locker, and that the truck allegedly rented and driven by the defendant was driven to a mall, not to pick up drugs.

### FINDINGS OF FACT AND STATEMENT OF REASONS FOR DETENTION

(1) There is probable cause to believe the defendant committed the conspiracy drug offense. The maximum penalty is in excess of ten years. There is therefore a rebuttable presumption against the defendant's release based upon both dangerousness and flight risk, under Title 18 U.S.C.§ 3142(e).

(2) Using the factors below, under Title 18 § 3142 (g), the Court considered the following:

    (a) <u>The nature and circumstances of the offense charged, whether the offense is a crime of violence or involves a narcotic drug.</u> The charge of Conspiracy to Possess and Distribute Ephedrine does

involve a series of inferences when taken together describe acts of three persons working in concert to obtain very large quantities of ephedrine for illegal distribution, which is historically unsurpassed.

  (b) <u>The history and characteristics of the person,</u> including: the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse.  The Court is not satisfied that there is suitable housing available to the defendant; the grandparents were absent from the hearing and therefore were not in a position to give the Court reasonable assurances.  The Court also questions the reliability of the person verifying the defendant's employment. Further, the defendant has admitted to frequent marijuana use which raises an elevated risk of nonappearance.

  (c) <u>Risk of danger to the community</u>.  Here, the defendant's alleged role in this crime poses a danger to persons and/or the community because of the immense quantity of drugs and its attendant street value.  For this defendant to have been entrusted with the responsibility inherent in this level of a large drug transaction, there is a significant likelihood that his value to the organization is great and thus the incentives to continue in criminal activity persist, dramatically increasing a risk of danger, if not flight.

(3) Based upon the foregoing information, it appears that there is no condition or combination of conditions that would reasonably assure

DETENTION ORDER
PAGE -4-

future Court appearances and/or the safety of other persons or the community.

**It is therefore ORDERED**:

(1) The defendant shall be detained pending trial and committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The defendant shall be afforded reasonable opportunity for private consultation with counsel;

(3) On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the defendant is confined shall deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding; and

(4) The clerk shall direct copies of this order to counsel for the United States, to counsel for the defendant, to the United States Marshal, and to the United States Pretrial Services Officer.

DATED this 17th day of May, 2005.

MONICA J. BENTON
United States Magistrate Judge